UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
:
FLOWER CORPORATION,                         :
                                            :
         Plaintiff,                         :
                                            : Honorable Madeline Cox Arleo
v.                                          :
                                            : Civil Action No. 03-4868 (WGB)
MYUNG SOON PARK, P&B                        :
CORPORATION, and ABC                        :
CORPORATION                                 : **REPORT AND RECOMMENDATION**
                                            :
                                            :
                                            :
                                            :
         Defendants.                        :
_____     :

Plaintiff Flower Corporation ("Plaintiff") moves for final judgment by default pursuant to Fed. R. Civ. P. 55(b)(2) against Myung Soon Park ("Park") and P&B Corporation ("P&B") (collectively, "Defendants"). On September 7, 2004, the Honorable William G. Bassler referred to me, for Report and Recommendation, Plaintiff's Motion for Default Judgment. For the reasons stated herein, this Court respectfully recommends that Plaintiff's Motion be granted as to compensatory damages of $175,000 for violation of Plaintiff's pendant state law claims, but denied as to treble damages for violation of the civil liability provision of the Racketeer Influenced and Corrupt Organizations Act ("R.I.C.O."), 18 U.S.C. §§ 1961 - 1968; and further denied as to treble damages for violation of the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1, *et seq.*

## BACKGROUND

On December 15, 2003, Plaintiff brought this action against Defendants. In a nutshell,

1

Plaintiff alleges that it entered into a contract in February 2002 to purchase a karaoke bar ("the Bar") owned by Defendants.  Under the contract, Defendants offered to sell the bar to Plaintiff after a trial management period lasting until December 2002, and it agreed to make certain payments according to the "Management Agreement" between the parties.  Later, the parties entered into a Modification Agreement that required some additional payments.  Plaintiff alleges that Defendants falsely mis-stated their intention to "sell" the Bar to Plaintiff.  Compl. ¶ 12. Indeed, Plaintiff claims that Defendants schemed to defraud Plaintiff in an illusory sale of the business that did not include its primary assets:  the liquor license or the leasehold interest.  Id. ¶ 14.  Plaintiff asserts that it made the payments in reliance on the promise of ultimate ownership of the Bar.

In November and December 2002, Plaintiff acknowledges in the Complaint that it "experienced financial difficulty in operating the business."  Id. ¶ 15.  According to the Management Agreement, a failure to make any payment due under this Agreement as and when due is deemed a breach of the Agreement.  Id. Ex. 1 at 4.  Defendants allegedly agreed to "wait for some time to 'accommodate' Plaintiff." Compl. ¶ 15.  Plaintiff contends that Defendants thereafter used illegal self-help measures, locking Plaintiff out of the Bar and causing the loss of Plaintiff's $175,000 investment.  Id. ¶ 15-16.  Furthermore, Plaintiff asserts that Defendants, in breach of the Agreement, failed to serve notice of the Plaintiff's breach as required by paragraph 11 of the Agreement when payments were initially delayed, and likewise failed to permit the agreed-upon "cure" period.  Id.  Apparently, Plaintiff never purchased the Bar.

Plaintiff filed a verified five-count Complaint claiming damages for violations of civil R.I.C.O. (Count I); conspiracy to commit R.I.C.O. violations (Count II); violation of state common law fraud (Count III); violation of the Consumer Fraud Act (Count IV) and declaratory

judgment (Count V).  Plaintiff seeks (1) compensatory and punitive damages; (2) statutory treble damages under either R.I.C.O. or the Consumer Fraud Act; and (3) declaratory judgment.

On November 4, 2003, a Summons and Complaint were served upon Defendants.  The docket reflects, and Plaintiff's counsel confirms, that Defendants failed to answer or otherwise respond to the Complaint.  The Clerk of the Court entered default as to defendants Park and P&B on February 6, 2004 for their failure to appear.  Plaintiff now moves for a final judgment by default which motion has been referred to me.

<u>ANALYSIS</u>

Federal Rule of Civil Procedure 55(b)(2) governs the Court's entry of default judgment. Generally, an application to the Court for a default judgment must contain evidence, by affidavit and documents, of the following: (1) the entry of a default; (2) the absence of any appearance by any party to be defaulted; (3) that the defendant is neither an infant nor incompetent; (4) that the defendant has been validly served with all pleadings; and (5) the amount of the judgment and how it was calculated; and (6) an Affidavit of non-military service, pursuant to the Servicemembers Civil Relief Act, 50 U.S.C App. § 521.

Here, the Court is satisfied that the requirements of service of process and default have been met.  Additionally, Plaintiff filed a declaration stating that Defendants' failure to appear is not caused by military service, and that Defendants are not infants or incompetent.

When a defendant is in default, the Court treats well-pleaded allegations of the plaintiff as true, except those relating to the amount of damages.  <u>Comdyne I, Inc. v. Corbin</u>, 908 F.2d 1142, 1149 (3d Cir. 1990).  The Court must independently consider Plaintiff's claimed damages. On January 19, 2005, an evidentiary hearing on the issue of damages was held before me. Plaintiff seeks compensatory damages for its alleged loss of $175,000 in payments made to

3

Defendants in anticipation of its purchase of the Bar.  Additionally, Plaintiff seeks to treble those damages under either the civil liability provision of R.I.C.O., 18 U.S.C. § 1964(c), or under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-19.  Each facet of claimed damages will be discussed in turn.

### A.    Compensatory Damages for State Common Law Fraud

Count III of the Complaint alleges that Defendants fraudulently misrepresented material facts to Plaintiff in order to induce Plaintiff's investment of funds.  Examining the Complaint, I find that Plaintiff has successfully pled this cause of action.

To establish a viable claim of fraudulent misrepresentation, a plaintiff must show: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge as to whether it is true or false; (4) with the intention of misleading another party into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.  See Richie and Pat Bonvie Stables, Inc. v. Irving, 350 N.J. Super 579, 589 (App. Div. 2002).

Plaintiff alleges that Defendants made the following material misrepresentations with the intent to deceive and acquire its money: (1) that Plaintiff would after ten months of use and occupancy at a combined monthly fee of $10,000, Plaintiff would have the option to purchase the bar; and, (2) that when Plaintiff had financial difficulties in the months of November and December of 2002, Defendant would wait and accommodate Plaintiff.  Compl. ¶¶ 14-15. Plaintiff alleges that he relied on such representations to his detriment, and was damaged as a result.  Id. at ¶ 50.

In support of the damages claim, this Court heard testimony from witnesses and considered the Plaintiff's moving papers and other supporting documents.   Mr. Woo Suk Min,

4

officer and sole shareholder of plaintiff Flower Corporation, testified that Plaintiff made the following payments to Defendants:  an initial deposit of $45,000; monthly payments of $10,000 for the ten-month period between February 2002 and December 2002; and a final payment of $30,000 supposedly being held in escrow by Defendants.  This Court is satisfied that the testimony provided by Mr. Min sufficiently demonstrates a compensable loss of $175,000 for common law fraud.

> **B.     Treble Damages Under R.I.C.O.**

Plaintiff alleges that Defendant violated civil R.I.C.O., 18 U.S.C. § 1962, and therefore, pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to "recover threefold the damages he sustains and the costs of suit, including a reasonable attorney's fee."  For the reasons expressed below, this Court finds that Plaintiff's R.I.C.O. claim fails as a matter of law.  Accordingly, Plaintiff is not entitled to treble damages.

In order to plead a violation of civil R.I.C.O., Plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  Lum v. Bank of America, 361 F.3d 217, 223 (3d Cir. 2004).  The specific racketeering activities alleged here are mail fraud and wire fraud.  "A pattern of racketeering activity requires at least two predicate acts of racketeering. These predicate acts of racketeering may include, *inter alia*, federal mail fraud under 18 U.S.C. § 1341 or federal wire fraud under 18 U.S.C. § 1343."  Id.  Here, Plaintiff claims that both the Management Agreement and the Modification Agreement were sent to Plaintiff via the mail in furtherance of the mail fraud scheme.  In furtherance of the wire fraud scheme, Plaintiff claims that Defendants made false representations over the phone; namely, that Plaintiff would be able to purchase the Bar after making the necessary payments, and that the liquor license and leasehold interest would be included in the purchase.

5

As discussed above, when entering a default judgment the facts stated in the complaint are taken as true.  Comdyne, 908 F.2d at 1149. Given this advantage, however, Plaintiff still fails to meet the required criteria for a civil R.I.C.O. claim. Civil R.I.C.O. claims based on mail and wire fraud are scrutinized more than other R.I.C.O. cases because these claims can be easily asserted and because treble damages are at stake. See Anderson v. Found. for Advancement, Educ. and Employment of Am. Indians, 155 F.3d 500, 506 (4th Cir. 1998) (stating that "we are especially cautious when the predicate acts involved are mail and wire fraud . . . .").  Because this Court finds that Plaintiff's mail fraud and wire fraud claims fail to meet the "pattern" element of the cause of action, I recommend denying, with prejudice, Plaintiff's Motion for Default Judgment as to the civil R.I.C.O. claim for treble damages.

When assessing whether a defendant's acts establish a pattern of racketeering activity, courts require at least two predicate acts.  Sedima, S.P.R.L.v. Imrex Co., 473 U.S. 479, 496 (1985).  Predicate acts are individual acts of a racketeering activity which may occur within a single scheme to defraud or within multiple schemes. H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 240-41 (1989). However, "while two such acts are necessary, they may not be sufficient." Sedima, 473 U.S. at 496.  Indeed, the Third Circuit expressed its "concern over civil RICO's increasing use in attempts to reach 'garden variety' business fraud and the potential utility of the pattern requirement as a means of curtailing this trend."  Barticheck v. Fidelity Union Bank, 832 F.2d 36, 40 (3d Cir. 1987).

"To establish a RICO pattern it must be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity."  H.J., 492 U.S. at 240 (emphasis in original).  "Continuity is both a closed-and open-ended concept, referring

6

either to a closed period of repeated conduct,[1] or to past conduct that by its nature projects into the future with a threat of repetition." Emcore Corp. v. Price Waterhouse Coopers, LLP, 102 F. Supp. 2d 237, 250 (D.N.J. 2000) (citing H.J., *supra*).

This concept of continuity is "difficult to formulate in the abstract." H.J., 492 U.S. at 241. To provide guidance for determining continuity in close-ended schemes, the Supreme Court has stated that "a party alleging a RICO violation may demonstrate continuity over a closed period by providing a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." Id. at 242; see also U.S. v. Pelullo, 964 F.2d 193, 209 (3d Cir. 1992) (describing a "substantial period of time" as greater than twelve months); Hughes v. Consol-Pennsylvania Coal Co., 945 F.2d 594, 611 (3d Cir. 1991) (holding that twelve months is not a substantial period of time "[b]ecause duration is the *sine qua non* of continuity in a close-ended scheme") (internal citations omitted).

Here, the acts in question – the alleged misrepresentations that induced Plaintiff to enter into the Agreements, which were subsequently mailed – occurred from February 2002 to January 2003. Consequently, this Court finds that the acts in question took place over a finite, close-ended period of eleven months. Plaintiff has not alleged a threat of future repetition necessary for an open-ended scheme. Thus, this Court finds that Defendant's actions do not meet the "substantial period of time" criteria for determining continuity in a close-ended scheme. See Hughes, 945 F.2d at 609-11. Indeed, "all the evidence points to a short term operation." Id. at

---

[1] This Court finds that the acts alleged by the Plaintiff conform to a close-ended scheme to defraud.

611.

Were this Court to determine that continuity is in doubt, the Third Circuit instructs that the factors articulated in <u>Barticheck</u> should be considered. <u>Tabas v. Tabas</u>, 47 F.3d 1280, 1296 n.21 (3d Cir. 1995). Those factors include "the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity." <u>Barticheck</u>, 832 F.2d at 39. Here, the alleged acts of mail fraud and wire fraud were committed by one perpetrator against a single victim over a period of eleven months. Absent a threat of future criminal acts, this "fraudulent activity directed at a single entity does not constitute a pattern." <u>Kehr Packages, Inc. v. Fidelcor, Inc.</u>, 926 F.2d 1406, 1418 (3d Cir. 1991); <u>Hughes</u>, 945 F.2d at 610 (finding no pattern where "defendants worked a single-scheme, single-victim operation that lasted one year at most"). Moreover, this Court finds that the alleged unlawful activity that took place between the parties is more accurately characterized as an acrimonious contractual dispute rather than an racketeering scheme, as contemplated by Congress in enacting the R.I.C.O. statute.

Accordingly, for the foregoing reasons, this Court finds that Plaintiff has failed to meet the essential requirement of a "pattern" necessary to maintain a claim for treble damages under 18 U.S.C. § 1964(c).

### C.    New Jersey Consumer Fraud Act

Plaintiff alleges that Defendant violated the New Jersey Consumer Fraud Act, <u>N.J.S.A.</u> 56:8-1, *et seq*., and therefore, pursuant to <u>N.J.S.A.</u> 56:8-19, Plaintiff is entitled to an award equal to threefold of the damages, and also "reasonable attorneys' fees, filing fees, and reasonable costs of suit." For the reasons expressed below, this Court finds that Plaintiff's CFA claim fails as a matter of law. Accordingly, Plaintiff is not entitled to treble damages.

To state a claim under the CFA, a "plaintiff must allege each of three elements: (1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendant's unlawful conduct and the plaintiff's ascertainable loss." New Jersey Citizen Action v. Schering Plough Corp., 367 N.J. Super. 8, 12-13 (App. Div.), certif. denied, 178 N.J. 249 (2003) (citing Cox v. Sears Roebuck & Co., 138 N.J. 2, 24 (1994)). "To constitute consumer fraud . . . the business practice in question must be 'misleading' and stand outside the norm of reasonable business practice in that it will victimize the average consumer . . . ." New Jersey Citizen Action v. Schering Plough Corp., 367 N.J. Super. at 13 (quoting Turf Lawnmower Repair, Inc. v. Bergen Record Corp., 139 N.J. 392, 416 (1995), cert. denied, 516 U.S. 1066, 116 S.Ct. 752, 133 L.Ed.2d. 700 (1996)). Under the CFA, "any unconscionable commercial practice, deception, fraud, false pretense, false promise, [or] misrepresentation . . . in connection with the sale or advertisement of any merchandise" is unlawful. N.J.S.A. 56:8-2.

Plaintiff alleges that false statements made by defendant in New Jersey, in addition to the alleged contract breach and self help by defendant, were unconscionable and in violation of the CFA. Compl. ¶ 54. As discussed above, when entering a default judgment the facts stated in the complaint are taken as true. Comdyne, 908 F.2d at 1149. Given this advantage, however, Plaintiff still fails to meet the required criteria for a consumer fraud claim.

In a CFA action, treble damages must be assessed once a plaintiff has established a causal relationship between "ascertainable loss and the unlawful practice of the condemned." Ramanadham v. N.J. Manufacturers Ins. Co., 188 N.J. Super. 30, 33 (App. Div. 1982), see also Feinberg v. Red Bank Volvo, Inc., 331 N.J. Super. 506, 511 (App. Div. 2000). Three broad categories of unlawful practices have been identified as violations of the CFA: "affirmative acts,

knowing omissions and regulatory violations." <u>Feinberg</u>, 331 N.J. Super. at 510 (citing <u>Cox</u>, 138 N.J. at 17).  While knowing omissions require a showing of intent, affirmative acts do not.  <u>Id.</u> Therefore, a plaintiff can be awarded treble damages by showing that a defendant's affirmative act was the "unconscionable commercial practice" proscribed by the CFA without having to show that the defendant intended such a practice.  <u>Cox</u>, 138 N.J. at 17.  However, if a plaintiff alleges that an omission or a failure to disclose was the "unlawful practice" alleged, the "the plaintiff must show that the defendant acted with knowledge."  <u>Id.</u> at 18.

Furthermore, the New Jersey Supreme Court held in <u>Kugler v. Romain</u> that "unconscionability must be equated with the concepts of deception, fraud, false pretense, misrepresentation, concealment and the like, which are stamped unlawful under <u>N.J.S.A.</u> 56:8-2."  58 N.J. 522, 544 (1971).  In <u>Kugler</u>, the court found that numerous sales of educational packages to mainly poor individuals at "a cash sale price six or seven times the wholesale price" was unconscionable.  <u>Id.</u> at 529.  However, where a plaintiff failed to allege a nexus between his losses and the defendant's actions, the court in <u>Feinberg</u> refused to award treble damages under the CFA.  331 N.J. Super. at 511.

Here, the proposed transaction for the sale of the Bar was commercial in nature.  Plaintiff alleges to have sought to operate the Bar for profit, and ultimately takeover ownership.  This Court finds that this business transaction falls within the ambit of the CFA.  <u>See Hundred East Credit</u>, 212 N.J. Super. at 356 (reasoning that businesses were not expressly excluded from the CFA).

Plaintiff alleges that he "began an arms' length negotiation to 'purchase'" the purported assets of defendant P&B, and that he "desired to purchase" the Bar.  Compl. ¶¶ 9, 11.  Plaintiff signed the Management Agreement which provided Plaintiff with the option to purchase the Bar

after a ten month period.  Id. at ¶ 13.  Plaintiff has alleged in Count Four that "false statements uttered during business meetings held in New Jersey [sic] were unconscionable and in violation of the New Jersey Consumer Fraud Act," which would entitle Plaintiff to "statutory treble damages." Id. at ¶¶ 53-55.

While Plaintiff's allegations are presumed to be true, Plaintiff has not sufficiently alleged a causal relationship between Plaintiff's loss and any "unlawful practice" of Defendants. Ramanadham, 188 N.J. Super. at 33.  Plaintiff also fails to allege how the "written agreement allegedly made to effectuate the parties' stated intent" was anything other than a clearly drafted contract that outlined the terms of the business relationship.  Compl. ¶ 11.  Furthermore, Plaintiff avers that he began an "arms' length negotiation," which implies that Plaintiff had an opportunity to examine the Management Agreement before signing it.  Id. at ¶ 9.  This Court finds the Plaintiff's damages were not the result of an affirmative act by the defendant.

Plaintiff has failed to allege how any failure to disclose by Defendants was the cause of any loss.  Plaintiff admits facing financial difficulty in operating the Bar under the terms of the Management Agreement.  Id. at ¶ 15.  In addition, Plaintiff has not alleged that Defendant knew or had any reason to know that Plaintiff would have financial difficulty that would prevent Plaintiff from purchasing the Bar at the end of the ten month period.  As such, Plaintiff has failed to allege that an omission resulted in the loss.

Accordingly, for the foregoing reasons, this Court finds that Plaintiff has failed to meet the essential requirement of identifying the nexus between the loss and an affirmative act or omission to maintain a claim for treble damages under N.J.S.A. 56:8-1, *et seq*.

Therefore, I recommend denying with prejudice Plaintiff's request for treble damages in the Motion for Default Judgment.

**CONCLUSION**

For the reasons set forth above, I recommend that Plaintiff's Motion for Default Judgment as to compensatory damages claim be GRANTED in the amount of $175,000 for Count III on State Common Law Fraud, and Plaintiff's Motion for Default Judgment as to the civil R.I.C.O. and Consumer Fraud Act claims for treble damages in Counts I, II and IV be DENIED with prejudice.  Parties have ten (10) days from receipt hereof to file and serve objections.


*s/Madeline Cox Arleo*
**MADELINE COX ARLEO**
**United States Magistrate Judge**

cc: Hon. William G. Bassler, U.S.D.J.
    Clerk
    All Parties
    File